AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
District of Delaware

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

To Search the Extraction of Cell Phone Data Located at the ATF Field Office

Case No. 18- 166M

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the _____ District of Delaware, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☒ evidence of a crime;
- ☒ contraband, fruits of crime, or other items illegally possessed;
- ☒ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. 841(a)(1), (b)(1)(C) | Distribution of Cocaine Base |

The application is based on these facts:
See attached Affidavit

☒ Continued on the attached sheet.
☐ Delayed notice of ____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

James Reisch, Special Agent, ATF
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 09/04/2018

_____
*Judge's signature*

City and state: Wilmington, Delaware

Christopher J. Burke, U.S. Magistrate Judge
*Printed name and title*

FILED 2018 SEP -4 PM 3:52 CLERK U.S. DISTRICT COURT DISTRICT OF DELAWARE

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

IN THE MATTER OF THE SEARCHES OF:

SAMSUNG GALAXY S8
MODEL SM-G950U, FCC ID: A3LSMG950U
IMEI: 356353081357744

CURRENTLY LOCATED AT:

ATF Wilmington Field Office
1007 North Orange Street, Suite 201,
Wilmington, Delaware 19801

Case No. 18-166m

## AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A WARRANT TO SEARCH AND SEIZE

Your affiant, James H. Reisch, being first duly sworn, hereby deposes and states as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. Your affiant makes this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property – an cellular phone – which is currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2. Your affiant am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives (hereinafter "ATF") and have been so employed since May of 2015. Your affiant is currently assigned to the Wilmington, Delaware Field Office within the Baltimore Field Division. Your affiant is a graduate of the Federal Law Enforcement Training Center's Basic Criminal Investigator Program and the ATF's Special Agent Basic Training Program. Prior to your Affiant's employment with ATF, your affiant was a sworn law enforcement officer with the

Virginia Department of State Police for ten (10) years. Your affiant spent four (4) years assigned to the Bureau of Criminal Investigation, General Investigation Section, Violent Crime Unit. This assignment as well as your affiant's previous six (6) years as a uniformed Virginia State Police Trooper afforded your affiant the opportunity to investigate and/or arrest and prosecute hundreds of individuals, for violent crimes, white collar crimes, cyber crimes, threats of death or bodily harm against persons, and numerous other criminal offenses in violation of the Code of Virginia and the United States Code. During that time, your affiant attended schools on homicide, child abduction, child death investigation, serial killers, criminal profiling, statement analysis, interview and interrogation, hostage negotiation, and crime scene forensics. Your affiant attended these schools through courses offered by The Virginia State Police, The Virginia Department of Forensic Science, The Virginia Department of Corrections, The Federal Bureau of Investigation, The Delaware State Police Homicide Unit, and The International Association of Homicide Investigators – the last of which your affiant is a member. Your affiant has testified in United States District Court and multiple jurisdictions across the Commonwealth of Virginia involving the aforementioned violations of law. Your affiant has participated in the preparation and execution of numerous arrest and search warrants for criminal offenses involving violations of the criminal code of Virginia, as well as United States Code. Your affiant is a forensic crime scene technician and a graduate of the 85th Session of the Virginia Department of Forensic Science Academy, a Crisis Negotiator, and Police Shooting Investigator. As such, your affiant has executed numerous search warrants of cellular telephones in relation to the illegal sale and possession of firearms, as well as in relation to numerous other crimes.

3. Your affiant seeks authority to search a cellular telephone seized in the possession of Subree Nobel WATERMAN (hereinafter "WATERMAN") at the time of his arrest on a

Federal criminal complaint for a violation of 21 U.S.C. §841(a)(1)—distribution and/or possession with intent to distribute a controlled substance.

4. Your affiant has conducted numerous controlled purchases that were recorded on video. I have reviewed these videos and can confirm that they show WATERMAN violating 21 U.S.C. §841(a)(1)—distribution and/or possession with intent to distribute a controlled substance (hereinafter the "SPECIFIED FEDERAL OFFENSE").

5. This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## IDENTIFICATION OF THE DEVICE TO BE EXAMINED

6. The properties to be searched are an SAMSUNG GALAXY S8 MODEL SM-G950U, FCC ID: A3LSMG950U, IMEI: 356353081357744 (hereinafter "TARGET DEVICE"). The TARGET DEVICE is currently located at the ATF Wilmington Field Office secured evidence storage, located at 1007 North Orange Street, Suite 201, Wilmington, Delaware 19801.

7. The applied-for warrant would authorize the forensic examination of the TARGET DEVICE for the purpose of identifying electronically stored data particularly described in Attachment B.

8. Your affiant contends based on the allegations herein, and further facts, set forth in this Affidavit, that there is probable cause to believe that the TARGET DEVICE contain evidence of violations of the SPECIFIED FEDERAL OFFENSE.

## SPECIFIED FEDERAL OFFENSE

9. This investigation concerns alleged violations of the following:

a. Title 21, United States Code, Section 841(a)(1), which prohibits any person from knowingly or intentionally manufacturing, distributing, or dispensing, or possessing with the intent to manufacture, distribute, or dispense, a controlled substance.

## TECHNICAL TERMS

10. Based on my training and experience, your affiant uses the following technical terms to convey the following meanings:

a. Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by

connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

      c. Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

      d. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four

satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

    e. PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

    f. Tablet: A tablet is a mobile computer, typically larger than a phone yet smaller than a notebook, that is primarily operated by touching the screen. Tablets function as wireless communication devices and can be used to access the Internet through cellular networks, 802.11 "wi-fi" networks, or otherwise. Tablets typically contain programs called apps, which, like programs on a personal computer, perform different functions and save data associated with those functions. Apps can, for example, permit accessing the Web, sending and receiving e-mail, and participating in Internet social networks.

    g. IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and

directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static – that is, long-term – IP addresses, while other computers have dynamic – that is, frequently changed – IP addresses.

      h. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

    11. Based on my training, experience, and research, and from consulting the manufacturer's advertisements and product technical specifications available online at https://www.apple.com/iphone-6s/specs/, your affiant knows that the TARGET DEVICE has capabilities that allow it to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA. Your affiant also knows that iPhones and Android devices function is much the same was a tablets and have many if not all of the same capabilities. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

    12. Based on my knowledge, training, and experience, your affiant knows that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

    13. *Forensic evidence*. As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct

evidence of the crimes described on the warrant, but also forensic evidence that establishes how the device was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the device because:

    a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

    b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

    c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

    d. The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

    e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

14. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant your affiant is applying would permit the examination of the device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

15. *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, your affiant submits there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

**FACTS ESTABLISHING PROBABLE CAUSE**

16. Beginning on March 28, 2018, two (2) ATF confidential informants (hereinafter "CIs") purchased various amounts of cocaine base from WATERMAN. There were seven (7) transactions with WATERMAN between March 28, 2018, and May 30, 2018. An additional transaction occurred with an associate of TARGET on June 12, 2018.

17. On the initial transaction that occurred on March 28, 2018, WATERMAN provided a cellular telephone number of (302) 310-7612 (hereinafter "TARGET TELEPHONE NUMBER") so that the CIs could contact him for future drug sales.

18. Before each of the subsequent transactions, including the June 12, 2018, the CIs made contact with WATERMAN via the TARGET TELEPHONE NUMBER to orchestrate the controlled purchases.

19. On August 29, 2018, your affiant authored and obtained a criminal complaint and arrest warrant for WATERMAN based upon the May 16, 2018 controlled purchase by the CIs. This transaction is detailed below:

    a. On May 16, 2018, Your Affiant set out to complete a controlled purchase of 1.5 ounces or 42 grams of cocaine base (hereinafter "crack") from WATERMAN using the CIs. The purchase was coordinated via telephone conversation and text messages, to the TARGET TELEPHONE NUMBER, prior to May 16, 2018, with the CIs. WATERMAN indicated that the price was $1,875.

    b. At approximately 1153 hours, CIs arrived in the area of WATERMAN's residence and parked on the west side of S. Van Buren Street, directly across from WATERMAN's residence of 512 S. Van Buren Street in Wilmington, Delaware. The CIs made telephonic contact with WATERMAN, on the TARGET TELEPHONE NUMBER. WATERMAN stated that he would be out in five (5) minutes.

    c. Approximately twenty (20) minutes later, at 1213 hours, WATERMAN entered the rear passenger side of the CIs vehicle.[1]

    d. WATERMAN delivered a quantity of crack cocaine that was later weighed and found to have a total weight of 43.10 grams. In the video of the transaction, WATERMAN can be seen producing two (2) large clear plastic baggies containing an off-white rock substance. WATERMAN placed these baggies onto a digital scale positioned atop the center console of the CIs' vehicle. The conversation inside of the vehicle, between

---

[1] This entire interaction was recorded on video, and your Affiant has viewed this video.

WATERMAN and the CIs, discussed the weights of the off-white rock substance as WATERMAN continuously placed additional pieces of an off-white rock substance on the scale. Once the total weight was reached, the CIs gave WATERMAN with $1,875 in United States Currency. The video shows WATERMAN counting this currency.

  e. At approximately 1217 hours WATERMAN exited the rear passenger compartment of the CIs' vehicle and walked back to his residence.

  f. The crack cocaine was taken back to the Wilmington Police Department where it was weighed and presumptively tested for the presence of cocaine. The presumptive test registered positive.

  g. Your Affiant compared the video footage of this transaction with WATERMAN's prior arrest photographs and confirmed that WATERMAN is the person who sold crack to the CIs.

  20. On August 29, 2018, your affiant arrested WATERMAN without incident. In WATERMAN's right hand, a member of law enforcement located the TARGET DEVICE. Soon after WATERMAN's arrest, your affiant called the TARGET TELEPHONE NUMBER from another phone line in order to determined whether the TARGET DEVICE was the same phone the CIs used to contact WATERMAN. The TARGET DEVICE began to ring when the call was placed, confirming the TARGET TELEPHONE NUMBER is assigned to the TARGET DEVICE.

  21. Your affiant submits that there is probable cause to believe that WATERMAN has violated Title 21, United States Code, Section 841(a)(1), distribution of cocaine base and/or possession of a controlled substance with intent to distribute.

22. Based upon your affiants training and experience narcotics traffickers utilize cellular devices in order to communicate with sources of supply and customers. Therefore, the forensic extraction of the TARGET DEVICE will likely assist authorities in uncovering further evidence of WATERMAN's drug offenses, including, identifying TARGET's co-conspirators, suppliers, and customers, and any locations where he may store drugs.

23. Furthermore, your affiant knows that drug dealers such as WATERMAN often communicate about drug transactions via text message, whether it be a traditional SMS message or a message through an application. These messages often provide additional evidence of the nature and extent of drug dealing activity.

24. Finally, your affiant knows that drug dealers often take photographs of drugs, money, or other valuable items. These photographs provide evidence of user attribution, direct evidence of drug dealing activity, or evidence of unexplained wealth.

25. Based on the above, your affiant submits that there is also probable cause to believe that the items listed in Attachment B are likely to be found on the TARGET DEVICE, listed in Attachment A, as WATERMAN has used the TARGET DEVICE to further his drug trafficking with the CIs.

## CONCLUSION

26. Your affiant submits that this affidavit supports probable cause for a search warrant authorizing the examination of the device described in Attachment A to seek the items described in Attachment B.

Respectfully submitted,

_____
James H. Reisch
Special Agent
Bureau of Alcohol, Tobacco, Firearms and Explosives

Subscribed and sworn to before me
on September 4, 2018:

_____
HONORABLE CHRISTOPHER J. BURKE
UNITED STATES MAGISTRATE JUDGE

13

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

IN THE MATTER OF THE SEARCH OF:

SAMSUNG GALAXY S8
MODEL SM-G950U, FCC ID: A3LSMG950U
IMEI: 356353081357744

CURRENTLY LOCATED AT:

ATF Wilmington Field Office
1007 North Orange Street, Suite 201,
Wilmington, Delaware 19801

Case No. _____

## ATTACHMENT A

The properties to be searched are an SAMSUNG GALAXY S8 MODEL SM-G950U, FCC ID: A3LSMG950U, IMEI: 356353081357744 (hereinafter "TARGET DEVICE"). The TARGET DEVICE is currently located at the ATF Wilmington Field Office, 1007 North Orange Street, Suite 201, Wilmington, Delaware 19801.

This warrant authorizes the forensic examination of the TARGET DEVICE for the purpose of identifying the electronically stored information described in Attachment B.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

IN THE MATTER OF THE SEARCH OF:

SAMSUNG GALAXY S8
MODEL SM-G950U, FCC ID: A3LSMG950U
IMEI: 356353081357744

CURRENTLY LOCATED AT:

ATF Wilmington Field Office
1007 North Orange Street, Suite 201,
Wilmington, Delaware 19801

Case No. _____

## ATTACHMENT B

1. All records on the TARGET DEVICE described in Attachment A that relate to violations of 21 U.S.C. §841(a)(1)—distribution and/or possession with intent to distribute a controlled substance (hereinafter the "SPECIFIED FEDERAL OFFENSE") and involve TARGET since January 1, 2018, including:

   a. Any electronic calendars, notes, task lists, or other information relating to any person's whereabouts or activities relevant to violations of the "SPECIFIED FEDERAL OFFENSE";

   b. Images, pictures, photographs, videos, or other visual depictions sent or received by the TARGET DEVICE regardless of the underlying program used to create, store, send, or receive such depictions relating to violations of the "SPECIFIED FEDERAL OFFENSE";

   c. GPS data showing the location and movement of the TARGET DEVICE from January 1, 2018, to present;

    d. Bank records, checks, credit card bills, account information, and other financial records related to violations of the "SPECIFIED FEDERAL OFFENSE"; and

    e. The content of any and all text messages or instant messages sent or received by the TARGET DEVICE regardless of the underlying program used to send and receive those messages relating to violations of the "SPECIFIED FEDERAL OFFENSE."

2.     Evidence of user attribution showing who used or owned the TARGET DEVICE at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.